UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                  Case No. 13-20143

ALVIN RAY,                                HON. AVERN COHN

    Defendant.
_____/

**MEMORANDUM AND ORDER DENYING
DEFENDANT'S MOTION FOR DISCOVERY
OF GOVERNMENT INFORMANT AND HIS
BACKGROUND AND OR TO PRODUCE
RECORDINGS AND NOTES (Doc. 40) AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS CONFESSION AND REQUEST
FOR EVIDENTIARY HEARING (Doc. 42)**

**I. INTRODUCTION**

This is a criminal case. Pursuant to a warrant, police officers searched Defendant Alvin Ray's (Ray) home and found crack cocaine, marijuana, and several firearms. Ray was arrested and charged in a four-count indictment (Doc. 7):

    Count One    Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1);

    Count Two    Possession With Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1);

    Count Three    Possession With Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1); and

    Count Four    Possessing a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c).

Ray filed Defendant's Motion For *Franks* Hearing And To Suppress Evidence (Doc.

23). The Court granted Ray a *Franks* hearing[1] (Doc. 25) and subsequently denied his motion to suppress evidence on the grounds that the statements made in support of the warrant affidavit were untrue (Doc. 31).

Now before the Court is Ray's Motion For Discovery Of Government Informant And His Background And Or To Produce Recordings And Notes (Doc. 40) and Motion To Suppress Confession And Request For Evidentiary Hearing (Doc. 42). For the reasons that follow, the motions are DENIED.

## II. BACKGROUND

The facts are described in the Memorandum and Order Denying Defendant's Motion To Suppress Evidence. (Doc. 31). A brief summary follows.

At some point prior to August 22, 2012 the Detroit Police Department (DPD) received complaints that narcotics were being sold at Ray's home. Accordingly, DPD officers decided to use a confidential informant (CI) for a "controlled buy." On August 22, 2012, DPD Officer Aaron Yopp (Yopp), along with other DPD officers, picked up the CI at an undisclosed location and took him to Ray's home. After the CI went to the front door, he returned to Yopp's vehicle with a knotted bag containing a substance that appeared to be marijuana. The CI told Yopp that he purchased the marijuana from a black male, age 33–37, 5'9", 230 pounds, with a medium complexion, bald head, and a fat face. He stated that the subject was Ray. The substance purchased by the CI tested positive for marijuana.

On August 22, 2012 Yopp applied for a search warrant authorizing the search of

---

[1] A *Franks* hearing is an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

Ray's home on Genessee Street in Detroit, Michigan. On the same day, the warrant was signed.

The day after, on August 23, 2012, officers executed the search warrant. Ray was found in the home. The police confiscated 31 ziplock bags of marijuana, 11 grams of separately-packed crack cocaine, and multiple guns.

Ray was transported to a police station where he was presented with a *Miranda* waiver form.[2] Ray initialed the waiver form in five different places, acknowledging each one of his rights. (Doc. 44-2, *Miranda* Waiver). Ray also signed the form under the following acknowledgment:

> I understand that these are my rights under the Law. I have not been threatened or promised anything, and I now desire and agree to answer any questions put to me or to make a statement.

(*Id.*). Ray filled in the date of August 23, 2012 at 3:55 p.m. below his signature. (*Id.*).

The form was also signed by two officers. The following box on the form is checked:

> This certificate of notification was read to the suspect, and he/she had an opportunity to read it. Further, the suspect was given an opportunity to ask any questions that he/she might have concerning this certificate and his/her rights.

(*Id.*).

After waiving his rights, Ray was given a "Statement Form" and he talked to the officers. The Statement Form was filled in with the statements Ray made. *See* (Doc. 44-3). Ray admitted to knowing that cocaine was in the closet of his home. He stated that he had a party the night before, and that one of his friends left the cocaine in the closet. Ray admitted to selling marijuana for approximately two months, purchasing the marijuana "an

---

[2] The waiver contained an explanation of Ray's rights that he was waiving pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

ounce at a time." Ray stated that, of the shotguns found in the home, only the one behind the door belonged to him, and the rest belonged to his girlfriend's deceased uncle. The Statement Form was signed and dated by Ray.

### III. MOTION FOR DISCOVERY OF CONFIDENTIAL INFORMANT

Ray's motion for discovery of the government's CI is twofold. First, Ray seeks the identity of the CI because he "does not believe" that anyone purchased marijuana from his home on the day the CI allegedly purchased marijuana. Second, Ray seeks rough notes, photographs, and police logs to determine the time that the CI made the controlled buy. In essence, Ray seeks to challenge that police had probable cause to obtain a warrant and search his home. His argument falls on deaf ears.

By filing the current motion, Ray in effect seeks reconsideration of the Court's decision denying his previous motion to suppress evidence. *See* (Doc. 31). In that order, the Court held that "the search warrant was properly executed and police had probable cause to believe that narcotics would be found at Ray's home." (*Id.* at 5) (citation omitted). Indeed, after holding an evidentiary hearing in which Yopp and a second officer testified, the Court concluded that "the affidavit was sufficient to establish probable cause and Ray's attacks on Yopp's truthfulness are baseless." (*Id.* at 7).

In addition, as the government correctly points out, Ray is not charged with the controlled buy involving the CI. Rather, he is charged based on the evidence seized during the execution of the subsequent search warrant. The CI cannot testify at trial to any relevant fact in the case and, therefore, disclosure of his identity or circumstances surrounding his controlled buy are irrelevant and not essential to a fair trial. *See United States v. Beals*, 698 F.3d 248, 270 (6th Cir. 2012) ("The informant helped orchestrate *the*

*search* that led to discovery of incriminating evidence, not the crimes themselves. Accordingly, the informant could not testify to any relevant fact, and the district court was therefore within its discretion not to order disclosure.") (emphasis in original).  Therefore, Ray's motion will be denied.

## IV. MOTION TO SUPPRESS CONFESSION

Next, Ray seeks to suppress the confession he made at the police station on the grounds that it was involuntarily. The Court will deny Ray's motion without holding an evidentiary hearing.

A judge determines the admissibility of evidence, as a matter of law, outside the presence of the jury. *Jackson v. Denno*, 378 U.S. 368 (1964).  At a suppression hearing, the government bears the burden in establishing admissibility of the evidence by a preponderance. *Lego v. Twomey*, 404 U.S. 477 (1972).

It is well settled that, "[b]efore the police may interrogate a suspect in custody, they must first read the *Miranda* warnings." *United States v. Pacheco-Lopez*, 531 F.3d 420, 423 (6th Cir. 2008) (citing *Miranda*, 384 U.S. 436).  Here, it is not disputed that Ray was in police custody and that he was interrogated.  Nor does Ray contend that he was not read his *Miranda* rights, or that he did not understand them.

Instead, Ray claims that his confession was involuntarily because he was coerced. Ray states that while his home was being searched, one of the officers advised him that unless he cooperated and took responsibility, his child's mother would also be arrested and his 14-year-old son would become a ward of the state.  In addition, he claims that he made the admissions only after being told that his statements were "off the record."

Courts consider the following to determine whether a confession is coerced:

5

> When a defendant claims that a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary. This Court has established three requirements for a finding that a confession was involuntary due to police coercion: (i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement.

*United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002) (quoting *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999)).

Here, the government has met its burden in proving by a preponderance of the evidence that the confession was in fact voluntary. Assuming as true Ray's assertion that an officer told him that his child's mother would be arrested if he did not cooperate, his confession at the police station was hours later and after he was *Mirandized*. There is ample evidence to suggest that Ray's confession was a result of the evidence seized from his home, and not any threat to charge his child's mother. In *United States v. Hunter*, 332 F. App'x 285, 289–90 (6th Cir. 2009), in an analogous situation, the Sixth Circuit stated:

> [T]here is ample evidence to suggest that the threat to charge Buck with a federal crime was *not* the crucial motivating factor behind Hunter's confession. There is no evidence in the record which indicates that the officers repeated the threat of a federal charge at the station, where Hunter ultimately confessed. At the station, it was only after Sergeant Frazier introduced the matter of the gun-residue test that Hunter confessed. Sergeant Frazier testified that "when I told [Hunter] how the test works and [that the examiners will] be able to distinguish between fireworks and gunshot residue, then he told me that he wanted to talk to me." The defense offered no evidence to contradict Sergeant Frazier's chronology. Thus, unlike in [*United States v.*] *Finch*–where the defendant immediately responded to the threat by confessing and testified that the threat was his motivation for confessing, 998 F.2d at 355–56–in this case Hunter confessed immediately after Sergeant Frazier threatened to administer the gun residue test. The gun-residue test was just as plausible a motivating factor as the threat to bring federal charges against Buck. Moreover, there is no admissible evidence that, in spite of the chronology of events, the threat of federal charges was the crucial factor that motivated him to confess.

(internal citations to record omitted).

6

In this case, like *Hunter*, it is equally plausible that Ray confessed at the station, after being *Mirandized*, because he knew he had been caught after the drugs and firearms were seized form his home during the search. There is no claim by Ray that officers repeated the threat that his child's mother would be arrested while he was being questioned at the station. Rather, he claims that he confessed when an officer told him they were "off the record." Ray's claim that he was coerced to confess is, therefore, without merit.

In addition, Ray's argument that the confession should be suppressed because an officer told him he was "off the record" does not have any vitality. Ray signed a *Miranda* waiver explaining to him all of his rights that he was waiving. In addition, Ray signed and dated the Statement Form detailing the statements he made *after* he made them. This undermines his claim that he was told that his statements were "off the record." Ray has experience with the criminal justice system, including a prior federal conviction for being a felon in possession of a firearm, rendering his explanation even less plausible.

Ray is not entitled to an evidentiary hearing because, assuming his claims to be true, they fail as a matter of law. Therefore, an evidentiary hearing will only serve as an unnecessary delay.

## V. CONCLUSION

For the reasons stated above, Ray's motions were denied. Trial will commence on January 24, 2014.

SO ORDERED.

       s/ Avern Cohn
       UNITED STATES DISTRICT JUDGE

Dated: December 5, 2013

7

## CERTIFICATION

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 5, 2013, by electronic and/or ordinary mail.

                                    s/Carol Bethel for Sakne Chami
                                    Case Manager, (313) 234-5160