UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                              Case No. 13-20143

ALVIN RAY,                                                                HON. AVERN COHN

      Defendant.

_____/

**DECISION ON REMAND**

## I.     INTRODUCTION

This is a criminal case.  Defendant Alvin Ray was convicted by a jury of drug trafficking and unlawful firearm possession.  Ray appealed, arguing that the Court erred in denying his motion to suppress statements made to police officers in a police-station interview after being placed under arrest and *Mirandized*.  The Court of Appeals reversed and remanded.  *United States v. Ray*, 803 F.3d 244, 279 (6th Cir. 2015).  As will be explained, the Sixth Circuit directed the court to (1) conduct an evidentiary hearing on Ray's motion to suppress, and (2) consider the impact of *Missouri v. Seibert*, 542 U.S. 600, 615 (2004) (plurality opinion) (outlining the criteria for when confessions made after "midstream" *Miranda* warnings between unwarned and warned questioning are admissible), on his case.

The Court conducted an evidentiary hearing and the parties filed supplemental papers.  The matter is now ready for decision.  For the reasons that follow, the Court

finds that Ray's post-*Miranda* statements at the police station were properly admitted into evidence and DENIES his motion to suppress the evidence on remand.

## II.      BACKGROUND

### A.

The factual background of the Defendant's case has been detailed at length in both the court's initial order denying his motion to suppress and the Sixth Circuit's opinion reversing that decision.  The following background is relevant only to deciding the issues on remand.

Upon receiving complaints of illegal drug activity at a residential address, police officers planned a controlled buy of drugs at the location using a confidential informant (CI).  Afterward, the CI returned carrying a small bag of marijuana that he said he had purchased from Alvin Ray (Ray), the Defendant.  Police officers obtained a search warrant to search the residence for drugs, executing it the next day at roughly 2:00 p.m.

In front of the house, police officers met a teenage boy on the sidewalk who said that Ray was his father and could be found inside.  After knocking on the door to no response, police officers announced and entered through the unlocked door.  Police officers Gregory Robson and Jeffrey Pacholski found Ray in the upstairs bedroom asleep with Cara Lee, his girlfriend and the child's mother.  After awaking the two, police officers brought them downstairs to the living room, handcuffed them, and continued the search.

In the bedroom, police officers uncovered (1) many small bags of marijuana on a television stand, alongside shotgun shells, mail addressed to Ray, and prescription pill bottles in his name; plus (2) an unloaded shotgun leaning behind the bedroom door.  In

the living room, they discovered (1) numerous small bags of crack cocaine in the pocket of a coat located in a closet, and (2) a semiautomatic handgun in another coat's pocket.

Ray and Lee were detained in the living room while police officers executed the search warrant.  Ray says that a police officer[1] then questioned him about the guns that were seized, prompting him to admit they were his.  After the search, police officers released Lee, placed Ray under arrest, and took him to the police station.  At the police station, police officers Robson and Hill provided Ray with a written *Miranda* waiver form.  At 3:55 p.m., Ray signed and initialed the form, certifying that he had "not been threatened" and wished "to make a statement."  As reflected in a statement form he signed, Ray made various admissions in response to questions by police officers Robson and Hill.

## B.

Ray was charged with (1) firearm possession by a convicted felon, (2) possession with intent to distribute cocaine base, (3) possession with intent to distribute marijuana, and (4) firearm possession in furtherance of a drug-trafficking crime.  Before trial, Ray moved to suppress the inculpatory statements he made at the police station, and for an evidentiary hearing on the motion.

The court denied the motion to suppress without an evidentiary hearing, concluding that the government had met its burden to show that Ray's statements at the police station were voluntary.

---

[1] At trial, Ray said the police officer who questioned him at the house was Patrick Hill, nicknamed "Wolverine."  (*See* Doc. 91 at 125-26).  Hill was deceased at the time of trial.  At the evidentiary hearing on remand, Ray said that the police officer questioning him at the house was instead James Wiencek.  (*See* Doc. 112 at 33-35).

Ray was convicted on all counts based on his admissions at the police station and other testimonial and physical evidence.  Ray appealed, arguing that the district court erred by not suppressing his post-*Miranda* confession at the police station because, under *Seibert*, the confession was tainted by his pre-*Miranda* admission during the search of the house.  As noted above, the Sixth Circuit reversed and remanded the matter for further consideration of Ray's motion to suppress at an evidentiary hearing under its articulation of the legal standard for midstream *Miranda* warnings under *Seibert*, *supra*, and its progeny.

### III.    RELEVANT AUTHORITY

The government "may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  A defendant waives his *Miranda* rights if the waiver is voluntary, knowing, and intelligent.  *Id.*

The Fifth Amendment's privilege against compelled self-incrimination bars the admission of involuntary confessions.  *See Colorado v. Connelly,* 479 U.S. 157, 163-64 (1986).  Notably, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'"  *Id.* at 167.  To determine if a confession is involuntary based on police coercion, courts must find that "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement."  *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999).

4

"The test for whether a *Miranda* waiver is voluntary is essentially the same as the test for whether a confession is voluntary." *United States v. Binford*, 818 F.3d 261, 271 (6th Cir. 2016) (quotation and citation omitted). "The government bears the burden of proving—by a preponderance of the evidence—the voluntariness of both an accused's *Miranda* waiver and confession." *Id.*

The Sixth Circuit's opinion in this case outlined and discussed at length the relevant Supreme Court decisions in *Elstad* and *Seibert*. As such, the Court does not repeat that treatment here.

## IV.    DISCUSSION

On remand, the Sixth Circuit directed the court to conduct a "full" evidentiary hearing on Ray's motion to suppress. *Ray*, 803 F.3d at 270. Then, after examining "a more fully developed factual record," the appeals court instructed the court to make findings as to whether:

- Ray's pre-*Miranda* statements during the search tainted his post-*Miranda* confession at the police station

- The government met its evidentiary burden under *Seibert* to show that the admission of Ray's confession into evidence was appropriate

- Ray's *Miranda* waiver was executed knowingly, voluntarily, and intelligently

- Ray's post-*Miranda* statements should be admitted under *Elstad*, *Seibert*, and their progeny

*Id.* at 269-70. The Sixth Circuit further articulated the legal standard under *Seibert* that the Court is to apply on remand. In that court's words:

> [W]e adopt *Seibert* plurality's multi-factor test for this Circuit and direct the district court to apply this test on remand. Under the multi-factor test, the admissibility of statements given after midstream *Miranda* warnings hinges on whether "a reasonable person in the suspect's shoes could have seen the station house questioning as a new and distinct experience, [and

5

whether] the *Miranda* warnings could have made sense as presenting a genuine choice whether to follow up on the earlier admission." The factors identified by the plurality as relevant to this inquiry are "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second [interrogations], the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first."

*Id.* at 272-73 (citations omitted) (alterations in original).

A.   **Whether Ray's pre-*Miranda* statements during the search tainted his post-*Miranda* confession at the police station**

Here, the police officers' conduct during the house search does not amount to coercion that tainted Ray's later *Mirandized* statements and rendered them involuntary. As the government correctly notes, Ray's testimony about the threat he received while detained during the search is not credible. At trial, Ray testified that an African American police officer, Patrick Hill, told him and Lee they were "going to jail" based on guns seized from the house, after which he took responsibility for the guns. (*See* Doc. 91 at 125-26). At the evidentiary hearing, Ray testified that a Caucasian police officer, James Wiencek, asked him and Lee "whose guns are these?" and, after no response, said "if no one wants to answer then both of you are going to jail." (*See* Doc. 112 at 33-35). These are substantially different accounts. In one version, a police officer asked Ray and Lee a question. In the second, the police officer made a declarative statement. In one, the threatening police officer was African American and nicknamed "Wolverine." In the second, the police officer was Caucasian with a different name. In the first version, Ray's admission immediately followed the police officer's statement. In the second, there is an intervening period of silence.

6

With such discrepancies in Ray's testimony on such basic facts as the race of

the threatening police officer, content of his threat, and timing of the admission, Ray's

testimony is not credible.  Moreover, no testimony by any police officer at trial or the

evidentiary hearing supports Ray's account of a police officer making a remark about

arresting Lee.  In light of these deficiencies, the evidence does not reflect that Ray was

subject to objectively coercive police conduct that motivated a decision to confess.  As

such, the government has met its burden to show that Ray's pre-*Miranda* statements

were voluntary and uncoerced, such that they did not taint his post-*Miranda* confession.

B.    **Whether the government met its evidentiary burden under *Seibert* to show that admission of Ray's confession was appropriate**

For the following reasons, based on testimony offered at the evidentiary hearing

and its arguments in its supplemental brief, the government has met its burden under

*Seibert* to show that the admission of Ray's confession was appropriate.

1.    ***"The completeness and detail of the questions and answers in the first round of interrogation"***

The first *Seibert* factor does not favor a finding that Ray's midstream *Miranda*

warnings were ineffective so as to render his confession inadmissible.  As discussed

above, Ray testified to different versions of the questioning he received at the house.  At

most, however, he indicated a police officer asked him and Lee "whose guns are

these?" and him individually "have you ever been to jail before?"  (*See id.* at 32-35).

Ray says he responded by saying "those are my guns" and "I have been to federal

prison."  (*See id.*).  The questions and answers to which he testified were brief and

cursory.  Moreover, Ray's answer at the house was incomplete.  For example, he

clarified at the police station that he owned only one of the guns at the house, the rest

7

belonging to his girlfriend's deceased uncle, and that he was a convicted felon. (*See* Evid. Hearing, Gov't Exh. 1).

### 2. *"The overlapping content of the two statements"*

The second *Seibert* factor likewise does not support a finding that Ray's police-station confession was inadmissible. Specifically, the overlap between Ray's abbreviated response at the house ("those are my guns") and his extended admissions at the police station is minimal. (*Compare* Doc. 112 at 35, *with* Evid. Hearing, Gov't Exh. 1). In the police-station interview, Ray admitted to a greater level of involvement with the seized contraband than was reflected in his initial remarks at the house. For example, he confessed at the police station to buying marijuana from a local gas station and selling it to neighbors "an ounce at a time." (*See* Evid. Hearing, Gov't Exh. 1). Ray further explained that a friend had left crack cocaine in his living room from a party the night before. (*See id.*).

### 3. *"The timing and setting of the first and the second"*

The third *Seibert* factor does not support a finding that Ray's *Miranda* warnings were ineffective. According to Ray, the time between his admissions at the house and the police-station interrogation was roughly 45 minutes. (*See* Doc. 112 at 40-43). According to police officers, the time between the search warrant's execution and police-station interrogation was about two hours. (*See* Doc. 89 at 35, 110). Splitting the difference, there was approximately an hour between the two rounds of questioning. The settings of the two sessions were also different. The first round was a handcuffed detention in the living room of Ray's home during the course of police officers' search for evidence. The second was an interview in an interrogation room of a nearby police

8

station.  Looking at the overall picture, these differences in location and time were

enough, as the government rightly observes, to create a "new and distinct experience"

for Ray in making his decision of whether or not to admit his crimes.  *See Ray*, 803 F.3d

at 272.

### 4.  *"The continuity of police personnel"*

The fourth *Seibert* prong does not support a finding of inadmissibility.  In Ray's

testimony at the evidentiary hearing, he said that the police officer who threatened Lee's

arrest at the house was James Wiencek.  (*See* Doc. 112 at 31-35).  However, the

interrogating police officers who questioned Ray at the police station were Gregory

Robson and Patrick Hill—entirely different police officers.  Thus, the government

correctly points out that Ray's own testimony disqualifies him under this factor of the

midstream *Miranda* test.

### 5.  *"The degree to which the interrogator's questions treated the second round as continuous with the first"*

Finally, the fifth prong in *Seibert* does not indicate that *Miranda* warnings were

ineffective.  There was no evidence the interrogating police officers referenced or used

Ray's prior admissions at the house in the interrogation at the police station.  To the

contrary, no police officer testified he was even aware of such admissions, or that Ray

had been questioned about the case while detained during the search.  Moreover,

police officers' interrogation questions were more specific than the alleged "whose guns

are these?" remark.  For example, they asked about Ray's criminal history, how he

carried out certain drug activities, and the length of his residency at the house.

(*See* Evid. Hearing, Gov't Exh. 1).

C.     **Whether Ray's *Miranda* waiver was executed knowingly, voluntarily, and intelligently**

There is no evidence that Ray's waiver of his *Miranda* rights before confessing at the police station was coerced. Ray specifically certified on his *Miranda* waiver form at the police station that he had not "been threatened" by anyone to induce his confession. (*See* Evid. Hearing, Gov't Exh. 1). As discussed above, Ray's reliance on a police officer's threat during the house search as a coercive influence on his police-station confession an hour later is meritless. Specifically, there was no credible evidence of threatening police conduct that was objectively coercive. Finally, Ray clearly initialed all of the rights he was waiving on the *Miranda* waiver form, and signed and dated it, before tendering his confession. (*See id.*). As such, the government has satisfied its burden to show Ray's execution of the *Miranda* waiver in this instance was intelligent, knowing, and voluntary.

D.     **Whether Ray's post-*Miranda* statements should be admitted under *Elstad*, *Seibert*, and their progeny**

Ray's confession at the police station was properly admissible into evidence for these reasons, all discussed above. First, Ray's confession was not tainted by objectively coercive police conduct in the house search before it, so as to render his statements involuntary. Second, the midstream *Miranda* warnings given to Ray by interrogating officials were effective under the circumstances, and presented him with a "genuine choice" of whether or not to confess under *Seibert*. Third, Ray executed a valid waiver of his *Miranda* rights that was knowing and voluntary. Thus, his post-*Miranda* statements at the police station were properly admitted under *Elstad*, *Seibert*, and associated authority.

10

## V.  CONCLUSION

For the above reasons, Ray's motion to suppress is DENIED.


SO ORDERED.


s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  June 8, 2016
        Detroit, Michigan