Hon. Judge Avern Cohn —Per Cohn
United States Courthouse
231 West Lafayette Blvd
Detroit Michigan 48226



F I L E D

NOV 28 2016

CLERK'S OFFICE
U.S. DISTRICT COURT

## MOTION FOR RECONSIDERATION

13-20143

Dear Judge Cohn:

NOW COMES the Petitioner, Alvin Ray, the Defendant in this case (hereinafter "Mr. Ray") on a *pro se* basis to respectfully petition this Honorable Court to reconsider its previous decisions in this case and to throw out the only firearm remaining after the Sixth Circuit's decision throwing out the other guns in this case so as to vitiate any basis for the five-year consecutive sentence under 18 U.S.C. §924(c) that this Court ordered. Mr. Ray is forced to submit this motion on a pro se basis with the help of several friends at USP Canaan because his court-appointed attorney felt that the remaining handgun issue was not properly before the Sixth Circuit on the present appeal. Mr. Ray disagrees with that assessment and hereby files this Motion for Reconsideration because Mr. Ray did not know anything about the handgun in the baseball jacket in the closet so he certainly could not have used it or "possessed" it in "furtherance of a crime" as required by §924(c). As the Sixth Circuit has thrown out both the rifle and the shotgun in this case because neither could possibly meet the standard for a firearm used in furtherance of a crime, this Court should do the same and throw out the handgun because it did not belong to me, and none of the police officers even remember me claiming ownership of the gun. I have already served two years for the marijuana that I said was mine, so once this Court throws out the handgun, I will be a free man again, and can rejoin my family in Detroit.

### PRELIMINARY STATEMENT

Mr. Ray is forced to do this Motion for Reconsideration on his own because his court-appointed attorney refuses to bring this vital issue up on appeal. The only issue remaining to be

dealt with is how could a handgun in a baseball jacket owned by a drunken friend who was asked by Mr. Ray to leave the party be used against Mr. Ray to give him a consecutive sentence of five years, when he had no knowledge of the gun in the baseball jacket (he would have given it to his friend when he put him in the cab), and he certainly did not "possess" the weapon in the "furtherance" of any crime as required by *United States v. Mackey*, 265 F. 3d 457 (6th Cir. 2001), and as based on in the Supreme Court's decisions in *Bailey* v. *United States*, 516 U.S. 137 (1995), and *Bousley* v. *United States*, 523 U.S. 614 (1998). The machine gun case in *United States v. O'Brien*, 560 U.S. 218 (2010) is inapposite because the defendants in *O'Brien* knew they possessed the machine guns. At no time here did Mr. Ray even know about the handgun, much less possess it. Because Mr. Ray's attorney refuses to present this indisputable argument to the Sixth Circuit, Mr. Ray is forced to come to this Honorable Court to ask for the relief from judgment that he deserves.

## I. MR. RAY'S CONVICTION UNDER §924(c) MUST BE OVERTURNED DUE TO A LACK OF EVIDENCE THAT HE POSSESSED MADDOX'S HANDGUN

Even a cursory review of the government's Opposition Brief (Gov. Br.) in Mr. Ray's appeal of Your Honor's decision in this case shows there are two different stories here. Hopefully, for Mr. Ray's benefit and in the interests of justice, this Court will notice that according to the government's own brief at no time did Mr. Ray "confess" that the crack cocaine or the handgun in Mr. Maddox's baseball jacket was his. In fact, the only thing that all parties can agree on is that Mr. Ray stated at the police station that the marijuana was his and the shotgun was his. At no time was Mr. Maddox's handgun even mentioned during the second interrogation, and according to the government and the five still living police officers, the "first" interrogation never happened, so there are no incriminating statements to exclude.

More importantly, according to the government's retelling of the facts of this case, none

of the police officers recalled Mr. Ray claiming any ownership of any of the guns or the drugs. See Gov. Br. at 6. The police officers claim that they only collected biographical data on the individuals living in the home and discussed mundane topics like the weather and sports. At no time during the "first" interrogation did anyone hear Mr. Ray claim ownership of any of the guns or the drugs; so therefore, there is no statement to exclude. Later on, at the police station, Mr. Ray did admit the marijuana was his and claimed ownership of the shotgun to protect his wife and his wife's mother. At no time during the second interrogation does Mr. Maddox's handgun come up, nor does Mr. Ray claim ownership of the 49 bags of crack cocaine or Mr. Maddox's handgun in the baseball jacket.

In its brief, the government makes a big deal out of the 31 bags of marijuana and the 49 bags of crack cocaine. See Gov. Br. at 3. But in reality 49 "nickel bags" of crack can fit in a regular cigarette pack very easily. Mr. Maddox, who was a well-known and respected "street" dealer, had no problem carrying a gun in one pocket of his baseball jacket and a pack of cigarettes filled with 49 nickel bags of crack in the other. The government would like this Court to believe that Mr. Ray is quite the drug dealer and it made sense for almost a dozen of Detroit's finest to raid his home and find 49 nickel bags of crack in a friend's jacket pocket. No wonder the City of Detroit was facing financial calamity if they had to spend hundreds of thousands of dollars to invade an American citizen's home to seize $250 worth of crack cocaine and lock Mr. Ray up for two years.

Aside from the fiscal irresponsibility of the government in this case, there was zero evidence adduced at trial that Mr. Ray ever "possessed" Maddox's handgun or even knew about it, much less used it in furtherance of a drug crime as required by §924(c). Since the government and the police officers all say the "first" interrogation never happened and the handgun never

came up in the "second" interrogation at the police station, there is absolutely no evidence or even a statement linking Mr. Ray to the only firearm left in this case: Maddox's handgun left in the baseball jacket in the closet. While it is true that Mr. Ray claimed ownership of the shotgun to protect his family from arrest, the Sixth Circuit has already thrown out the shotgun and the rifle in this case and now it is time to throw out the Maddox handgun as well and send Mr. Ray home to his family, because he has already served two years for the marijuana that he admitted to possessing.

This result in the interests of justice is supported by the government's own appellate brief. According to the government's brief on page 20, Mr. Ray is asked what guns belonged to him, and he claimed ownership of only the shotgun that was in his wife's mother's bedroom. More importantly, on page 24 of the government's brief, the government states that none of the police officers recall Mr. Ray making any incriminating statements while he was questioned in his home. Therefore, since Mr. Ray was never asked about the Maddox handgun at the police station, and since he never claimed to own or possess the Maddox handgun, and since the Sixth Circuit has thrown out all of the other firearms in this case, it is time to throw out the Maddox handgun as well based on the government's own retelling of the facts of this case and to vacate Mr. Ray's §924(c) conviction for a handgun that was never his and that he never possessed or used in the furtherance of a drug crime.

## II. UNDER THE SUPREME COURT'S DECISIONS IN BAILEY AND BOUSLEY THE DEFENDANT DID NOT USE OR POSSESS A FIREARM FOR A CONVICTION UNDER 18 U.S.C. §924 (c)

Under the Supreme Court's decision in *Bousley v. United States*, 523 U.S. 6114 (1998), which in turn is based on the Supreme Court's landmark decision in *Bailey v. United States*, 516 U.S. 137 (1995), a defendant cannot be prosecuted and convicted under 18 U.S.C. §924(c)

merely for the storage of a firearm or even the possession of a firearm or even the possession of a firearm near drugs or the proceeds of a drug trade. The gun or firearm at the center of a §924(c) charge must be actually used or brandished during the commission of a drug crime or to protect his "stash." In this case, the Sixth Circuit has already thrown out the shotgun found in the bedroom of Mr. Ray's home and the rifle stored in the mother-in-law's room for the purposes of §924(c). See the Sixth Circuit's decision in *United States v. Ray*, 803 F. 3d 244 (6th Cir. 2015). The only remaining weapon is the handgun found in the baseball jacket hanging in the closet that did not belong to Mr. Ray, but instead belonged to a friend of his, Anthony "Mad Dog" Maddox, who is currently serving life in a Michigan State Prison for actually killing someone a month after the party that is the subject of the events in this case. Mr. Maddox came to the party drunk and was asked to leave by Mr. Ray. Mr. Ray called a cab for Mr. Maddox and escorted him out of the house on the night in question, leaving behind Mr. Maddox's baseball jacket with the gun and the drugs in the pocket. The raid on Mr. Ray's home, where he lived with his Common-Law Wife Cara Lee and his wife's mother Patsie Lee, who owns the house, happened the next day after the party. Mr. Maddox, who fancies himself as a modern day master criminal like Al Capone or "Scarface" has many colorful "street" nicknames and was, in fact, the owner of the weapon that was charged in Mr. Ray's case.

Because the police raid happened the very next day after the party, Mr. Maddox never had time to come back to Mr. Ray's home to collect his jacket with the gun and drugs in it. Clearly the baseball jacket was not Mr. Ray's and clearly the gun and the drugs in the baseball jacket did not belong to Mr. Ray. Certainly the gun found in Mr. Maddox's baseball jacket cannot be part of any drug transaction that Mr. Ray was involved with, and even if one assumes, arguendo, that the gun in the closet was "possessed" by Mr. Ray, both *Bailey* and *Bousley* say

that "mere possession" is not enough to sustain a §924(c) charge under the exact terms of the statute. See, for example, a case from the Second Circuit, where Judge Cedarbaum reversed the conviction of a defendant because the gun in question in that case was not used "in furtherance of" the drug crime as required in both *Bailey* and *Bousley*. See *United States v. Tisdale*, (1998 US DIST. Lexis 734).

The reason that the Supreme Court's decisions in *Bailey* and *Bousley* are particularly significant here is that Mr. Ray has already served two years in prison, which means if this Court were to throw out the remaining gun in this case, the handgun owned by Mr. Maddox, then Mr. Ray would be a free man because his sentence for the drug possession was only two years and his sentence for the §924(c) violation was a mandatory consecutive sentence of five years. Thus, if Mr. Maddox's gun is eliminated from this case, Mr. Ray can get back to his life, and the real "criminal" here, Mr. Maddox, is already serving life.

Even in the Sixth Circuit's decision in *United States v. Mackey*, 265 F. 3d 457 (6th Cir. 2001), the Sixth Circuit made it clear that the government must show that a gun was used to "advance or promote the crimes charged" to satisfy the "in furtherance of" requirement of §924(c). See *Mackey* at 460-463. Because the only gun the Sixth Circuit left in consideration of satisfying the §924(c) requirement was Mr. Maddox's gun in the baseball jacket in the closet, that gun cannot possibly satisfy the "in furtherance of" element of §924(c), because no evidence was adduced at trial that Mr. Ray even knew the gun was in the closet until the police found it there, much less that the gun was used by Mr. Ray. Just as the Sixth Circuit threw out the shotgun in the bedroom and the rifle in the basement, Mr. Maddox's pistol in the baseball jacket should have been thrown out as well because Mr. Ray did not know it was there and it was not being used to "advance or promote" any crime involving Mr. Ray. Most importantly, none of the officers

remember Mr. Ray claiming ownership of the handgun and no one ever asked him about the handgun in Mr. Maddox's baseball jacket.

### III. MR. RAY IS TELLING THE TRUTH

Your Honor found Mr. Ray to not be credible, but Mr. Ray has told the absolute truth at trial under oath. Unfortunately, the two witnesses that can back up Mr. Ray's story are unavailable. One is dead Officer "Wolverine" Hill and the other, "Mad Dog" Maddox, is serving life in a Michigan State Prison for killing someone about a month after the party. One wonders, if Mr. Maddox might have killed someone that very night had Mr. Ray not asked him to leave and if Mr. Maddox had not left his baseball jacket behind in a drunken stupor. Moreover, both Cara Lee, Mr. Ray's Common-Law Wife, and her mother Patsie Lee, testified at Mr. Ray's trial that the gun in the jacket in the closet did not belong to Mr. Ray. But, even if the gun did belong to Mr. Ray, which clearly it did not, that is still not enough under *Mackey*, *Bailey*, and *Bousley*, because mere possession is not enough under the law to support a §924(c) conviction.

Despite the fact that he testified at trial truthfully, Your Honor is using the statements that he made when 6-7 Detroit policemen raided his home, unlawfully seized him, handcuffed him and made him face the wall while they proceeded to search his home based on the false statements of some unknown confidential informant, who said that he had bought drugs from someone in the home. The transcript of the afternoon raid is clear. While Mr. Ray and his wife Cara Lee are handcuffed, she asks if she is going to jail and the police say there are enough guns to lockup everyone for a long time. Mr. Ray, hearing that, does the noble thing and says that the drugs are his and the guns are his, not even knowing about Mr. Maddox's handgun in the baseball jacket in the closet, and the later evidence clearly shows that the other guns in the house belonged to Patsie Lee and her family, and not Mr. Ray. That is why the Sixth Circuit threw out

the shotgun and the rifle, because clearly they did not belong to Mr. Ray and were not used "in furtherance" of any crime. Therefore, Mr. Ray did the right thing, he told a lie to protect his 14 year old son's mother and his wife from prosecution and jail. Later, after being taken to the Detroit Police Department, 2nd Precinct, he told the truth and then told the truth again at trial under oath. Unfortunately, the people who could convincingly back his truthful story are either dead or incarcerated. But once again, none of the police officers recall Mr. Ray claiming ownership of the handgun in Maddox's baseball jacket in the closet, and no one gave evidence that Mr. Ray even knew about the gun.

In addition to the *Seibert v. Missouri* standard, Your Honor should also recall the Supreme Court's decision in *Orozco v. Texas*, 394 U.S. 324, 329 (1969), where U.S. Marshals invaded a boarding house in Texas to interview and investigate a poor man staying there. In *Orozco*, even though the man did not own the boarding house, it was considered his "home" and the Miranda warnings were required to be given before any interrogation proceeded.

Respectfully submitted,

/s/ Alvin Ray
Alvin Ray
Petitioner, *pro se*
Reg. No. 23041-039
USP Canaan
P.O. Box 200
Waymart, PA 18472